January Term, 1861.

MORLEY
v.
GUILD et al.

MORLEY vs. GUILD and others.
MORLEY vs. VAUGHN and others.

Under sec. 5, chap. 124, R. S. 1858, and sec. 1, chap. 220 of the laws of 1859, a defendant in an action for the foreclosure of a mortgage on real estate, who has been served with a summons and notice of no personal claim, may, at any time within ninety days after such service, demand a copy of the complaint, and may answer at any time within twenty days after the service of such copy.

When a pleading is to be verified by an attorney, it should state matters within the knowledge of the party in the same manner as though it were to be verified by the party himself.

Where a pleading which states facts as of the knowledge of the party making it, is verified, in a proper case, by the attorney, it is not necessary for the attorney, if he has no knowledge of the facts, to state that any part of the pleading is true of his own knowledge; it is sufficient if he states that he *believes* it to be true, and sets forth the grounds of his belief.

In all cases the verification, or verification and pleading, should be so drawn as to show what matters are verified on the knowledge of the person making the affidavit, and what upon his belief of their truth.

Where an agent or attorney verifies the pleading upon his personal knowledge, he must, besides saying that he knows it to be true, set forth his knowledge upon the subject.

APPEAL from the Circuit Court for *Dane* County. The case is stated in the opinion of the court.

January Term, 1861.

*Edson Kellogg*, for appellants, as to the insufficiency of the verification of the complaints, cited 11 How. Pr. R., 374; 12 id., 64; 14 id., 334.

MORLEY
v.
GUILD et al.

· *Clark & Aldrich*, for respondents, as to the sufficiency of the verification, cited *Gillett vs. Houghton* and *Mills vs. Houghton*, 8 Wis., 311; *Bates vs. Pike*, 9 id., 224; 1 Whittaker, 333; 2 id., 407; *Latson vs. Lefever*, 5 Sandf., 650; *Dixwell vs. Wordsworth*, 2 Code Rep., 1.                ◆

*By the Court*, Dixon, C. J.   The facts of these two cases, so far as they are connected with any disputed questions of law, are precisely the same, and both were treated as one cause at the argument.   They present two questions of practice for our determination.   The first relates to the time within which a defendant in a foreclosure action, against whom no personal claim is made, may be permitted to answer, under the operation of sec. 5 of chap. 124 of the Revised Statutes, and sec. 1 of chap. 220 of the Laws of 1859, in a case where he is served with a summons and a notice of no personal claim, and within ninety days thereafter makes a demand in writing that he be served with a copy of the complaint.   In these cases the demands of copies of complaints were made some three or four days before the expiration of ninety days after service, and, in obedience thereto, copies were served within twenty days thereafter, but not until the ninety days had expired.   The defendants served their answers within twenty days after receiving the copies of the complaints.   The answers were returned for the reason that the time for answering had expired, and because they were not properly verified.

The first section of the act of 1859 declares, that in all actions for the foreclosure of mortgages on real estate commenced after its passage, the defendants shall have ninety days time to answer the complaint, after the service of summons or publication of notice as now required by law; and that no default shall be entered until after the expiration of such time.   Section 5 of chapter 124, which is the only ex-

April 10

isting statutory regulation of the time for serving complaints as well as answers under certain circumstances, and which is applicable to all actions and governs their proceedings, except so far as it is modified by the first section of the act, provides in the first clause, that a copy of the complaint need not be served with the summons, but that in such case the defendant may, within *twenty* days thereafter, demand a copy of the complaint, which shall be served within twenty days after such demand; and that after such service the defendant shall have twenty days to answer. By the second clause it is provided, that in the case of a defendant against whom no personal claim is made in the action, the plaintiff may deliver to him with the summons, a notice setting forth the general object of the action, a brief description of the specific real or personal property to be affected by it, and that no personal claim is made against such defendant, in which case no copy of the complaint need be served on the defendant, unless within the *term* for answering, he shall, in writing, demand the same.

From these provisions it will be seen that, by the strict language of the laws, a defendant who is served with a copy of the summons only, must demand a copy of the complaint within *twenty* days after such service; while one who, in addition, receives a notice of the object of the action and of no personal claim, may do so within the *term* for answering, which, in the case of actions for foreclosure, is ninety days. On the part of the respondent it is insisted, first, that by the terms of the first section of the act, the time for answering in such actions cannot exceed ninety days; and secondly, that inasmuch as at the time of the passage of the Revised Statutes, the expressions "twenty days" and "term for answering" meant precisely the same thing, they are to be so understood and interpreted now, notwithstanding the changes which have been introduced by the act of 1859 in the class of cases under consideration. We do not think that either position is correct. There is nothing in the language of the first section which would in any manner uphold us in saying that the legislature intended that defendants in such actions should in no case have more than ninety days in which to

answer. It is clear that they intended that such defendants
should have that full number of days, but that they should
have no more cannot be inferred. On the contrary, the fair
presumption, both from that and other legislation on the
same subject, would be that the legislature were both willing
and desirous that defendants in such actions should have
not only all the time which it could give them, but also
such as could be obtained through the skill and ingenuity
of the shrewdest and most artful legal practitioners. And
as to our saying that the words "term for answering," as
applied to these actions, mean twenty days, it is manifest
that we cannot do so without contradicting the express
language of the statute. To do it, in order to make the
practice where notice of no personal claim is served, con-
form to that where such notice is not served, would be for
us to perform an act of judicial legislation, not less repug-
nant to the principles of the constitution than an act of leg-
islative adjudication. The language, being plain and unam-
biguous, must govern; and the fact that it may produce un-
reasonable or incongruous results, furnishes no justification
for a departure from it. It may have been an oversight,
and if so, it is another illustration, of which we have already
had too many, of the dangerous tendency of legislation so
hasty and ill considered as to produce statutes which are
frequently a surprise upon those who have enacted them.
So far, therefore, as the objection to the answer depended
upon the time of its service, it was not well founded.

This brings us to the consideration of the other question,
which is, whether the complaints were properly verified.
The defendants, conceiving that they were not, served an-
swers without oath, which were returned, and judgments
entered as upon a default to answer. The affidavits were
made by one of the attorneys for the plaintiff, who, in sub-
stance, deposed that he was such attorney; that the plaintiff
was not a resident of the county in which the suits were
brought, but resided in the state of New York, and was
therefore unable to make them; that the actions were
founded upon bonds and mortgages in writing for the pay-
ment of money only, which were in his possession as such

attorney; that all the material allegations of the complaints were grounded either on the bonds and mortgages or the information given, or communications made to him by the plaintiff, personally or in writing, which communications he believed to be true; that his knowledge and the grounds of his belief on the subjects of said complaints, and the reasons why the affidavits of verification were not made by the plaintiff, were as above stated; and that he had read the complaints and believed them to be true. The allegations of the complaints were made in part by way of direct affirmation, and in part upon information and belief.

The principal ground of objection to the verification is, that the affidavit did not pursue the language of the first clause of section 19 of chap. 125 of the Revised Statutes, and state in effect that the complaint was true to his knowledge, except as to those matters stated on information and belief, and as to those matters he believed it to be true. It is contended that the statute makes these words essential to every verification, whether it be made by a party, an agent, or an attorney, and that they are particularly so whenever the averments of the pleadings are positive, or as upon the knowledge of the parties making them. Looking to the phraseology of the entire section, we are of the opinion that this interpretation cannot be sustained. The difficulty with the section, and that which has led to so much doubt and perplexity is, as Judge HARRIS says in *Mead vs. Gleason*, 13 How. Pr. R., 310, that by it the framers undertook to accomplish quite too much, and in doing so have crowded together several provisions which should have been the subjects of distinct sections. The first clause prescribes in substance what the verification must be, and that it must be made by the party, or one of them, if there be several, if such party be within the county where the attorney resides, and capable of making the affidavit. In providing for this verification by the party, who is generally supposed to have more or less direct knowledge of the subject of the litigation, it was very natural for them to say, that as to those matters of which he was personally cognizant, he should swear that he knew them to be true, and of those which

January Term,
1861.

MORLEY
v.
GUILD et al.

rested on his information and belief, that he should state that he believed them to be true. And in adopting this form of verification, the legislature may, no doubt, have had in view the forms of the allegations contained in the complaint or other pleading, contemplating that those things which were known to the party would be so stated therein; and that those which came to him through information derived from others, and of which he did not possess positive knowledge, would be stated as upon information and belief; and that thus the pleadings and verification would harmonize and explain each other. But in no case do we think that the legislature intended to prescribe anything more than what should be the substance of the verification according to the circumstances of the person making it. They did not intend to prescribe a *form* of oath which must at all times be followed. Nor do we think it was intended that the verification should in all cases follow or be governed by the form of the allegations contained in the pleadings; nor that the allegations of the pleadings should be varied so as to accommodate themselves to the condition of the person who is to verify them. With a party or other person possessing actual knowledge of the matters in controversy, or some part of them, no doubt greater strictness in pursuing the language, or rather the substance, of the statutory requirement should be observed, and the verification, or the verification and pleadings, should be so drawn as to show what matters he verifies upon his knowledge, and what upon his belief of their truth. Good faith and the proper accomplishment of the objects in view, which were truthfulness in pleading, the narrowing of the issues to the facts really controverted, and the exclusion of fictitious and sham statements and defenses, require this. It is furthermore necessary, in order that falsehood and perjury may be the more easily and certainly detected and punished. But where the oath of the person making the verification rests entirely upon information and belief, it clearly is not necessary for him to say that the pleading is true to his knowledge, and then to neutralize the statement with an exception which places every allegation upon his belief. The legislature

could never have intended to establish any such idle ceremony in a matter of so much solemnity and importance. It would be a merely formal and not a substantial act; a mere empty sound of words, when the affidavit itself, or the affidavit and pleadings, would otherwise show that there was nothing of which the affiant undertook to speak as of his own positive knowledge. Both the language and spirit of the section require that the person verifying the pleading should have personal knowledge or reasonable grounds of belief that the pleading is true, and that when he verifies it upon such knowledge he shall so state, but if upon belief, then his oath to such belief shall be sufficient. In the latter case, therefore, it is enough, if he is a party, that he states that he believes it to be true; and if an agent or attorney, that he, in addition, sets forth his grounds of belief, and the reasons why the affidavit is not made by the party. When the agent or attorney verifies the pleading upon his personal knowledge of its material allegations, he must, besides saying that he knows it to be true, set forth his knowledge upon the subject. And when a pleading is verified upon information and belief, we do not think the form of its averments material. The conscience of the person making the affidavit may be as firmly bound, and perjury as well assigned, when the averments are direct and positive, as when they are made upon information and belief. If he makes the affidavit without having reasonable grounds for believing; and without believing, that all the material facts and allegations are true, in whichever form they may be stated, he is forsworn, and, upon the proper proof, may be convicted of perjury. The language of the pleading is the language of the party, the use of which is supposed to be governed by certain principles of law as well as of truth and consistency; and these principles would be most needlessly violated were we to hold that it must at all times be changed or varied to suit the condition of the agent or attorney, when the same end can be attained without such change or variation. It would frequently destroy the force of the language and render the pleading false on its face. Many transactions are of a personal nature and must be known to the parties in inter-

est. In such cases, to say that the party, who is supposed to speak, must ignore his acquaintance with the facts, and tell the court that he has been informed and believes that such and such things took place, is to say that the law compels an absurdity. Take, for example, the common case of an action upon a promissory note, by the payee against the maker, where all the facts are known to the payee, and the complaint is to be verified by the attorney, is it to contain a false statement of facts in order that he may do so? Or take that of an action to recover damages for an assault and battery, committed under circumstances where the complaining party must know all the facts attending the alleged offense. And suppose the party accused has admitted them to the agent, who is the only witness, and in the meantime, while the plaintiff is physically incapable of making the affidavit, an action is to be brought and the agent desires to verify the complaint. Is the plaintiff to come and say to the court that he is informed and believes that on a certain day and at a certain place an assault and battery was committed upon him, and that he is also informed and believes that A. B. is the person who committed it? Such a mode of pleading, in this and many other actions, would seem absurd, and we do not believe the legislature intended it. A very clear and sensible discussion of the question will be found in the case of *Kinkaid vs. Kipp et al.*, 1 Duer, 692. The pleading in that case (the answer of the defendants), con tained no statements or admissions on information and belief, but all were made as of their positive knowledge. The defendants verified it by affidavit, in which they severally made oath, each for himself, that it was true of his own knowledge. The objection was, that the verification was not in the form or to the effect and purport prescribed by the statute; that it did not state that the answer was true of the defendants' own knowledge, *except as to matters therein stated on information and belief, and as to those matters they believed it to be true.* The court decided that the verification was sufficient, and that the addition of those words would have been useless and improper. They say: "This objection assumes that in *all* cases where a pleading is verified, it is necessary, un-

der the Code, to insert in the verification the exception as to matters stated on information and belief, whether any matters are so stated in the pleading or not. And it may be a common practice to put the verification in that form indiscriminately in all cases, but we have no hesitation in saying that in a pleading which alleges or admits *nothing* on information or belief, it is not only unnecessary but improper to put such a senseless exception in the verification. It is improper because it implies a falsehood, and makes the party swear to a false implication. The Code does not in terms require that such a verification, as a *form*, shall be tacked to every pleading, whether it fits it or not; and it would be against common sense and reason to give it such a construction. If a party who, in his answer, had stated nothing on information and belief, thinks it advisable to swear that he believes such statement to be true, he doubtless has a right to do so; but if in such case he confines himself to swearing that his answer is *true to his knowledge*, he not only complies with the requirements of the Code, but avoids what, to say the least of it, is a harmless absurdity." See also *Dixwell vs. Wordsworth*, 2 Code Reporter, 1; *Southworth vs. Curtis*, 1 Code Reports, N. S., 412; and 6 How. Pr. R., 271.

This view of the statute disposes of the question. The verification here was made under the second clause, and belongs to the second class of cases provided for in the section. In *Gillett vs. Houghton*, 8 Wis., 311, it was held that the possession by the attorney or agent, of a written instrument for the payment of money only, is in all cases a sufficient statutory ground of belief and reason for his verifying the complaint in an action brought upon it. These facts are fully made to appear in the affidavits before us; and the attorney having sworn that he believed the complaints to be true, it was a sufficient verification, and the answer of the appellants was properly returned for want of being verified.

The orders of the circuit court refusing to set aside the judgments for irregularity, are therefore affirmed.